UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TENA ROBINSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>OCWEN LOAN SERVICING, LLC; and DOES 1-100, inclusive,<br><br>　　　　Defendant. | No. 2:14-cv-01669-MCE-EFB<br><br>**MEMORANDUM AND ORDER** |

Through the present action, Plaintiff Tena Robinson ("Plaintiff") seeks redress from Defendant Ocwen Loan Servicing, LLC ("Ocwen"). Ocwen services the mortgage on Plaintiff's home located at 3350 Y Street, Sacramento County, California ("the subject property"). According to Plaintiff, Ocwen failed to apply a loan modification promised by its predecessor, GMAC Mortgage LLC ("GMACM"). Presently before the Court is Ocwen's Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") in its entirety for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] As set forth below, Ocwen's Motion will be GRANTED.[2]

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with Local Rule 230(g).

# BACKGROUND[3]

On May 5, 2006, Plaintiff refinanced her mortgage on the subject property with a $309,600 loan. ECF No. 21-1 at 2 ¶ 1.[4] The loan was serviced by GMACM, and secured by a deed of trust. In February, 2008, a notice of default was recorded on the dead of trust because Plaintiff owed over $7,000 in arrearages. ECF No. 21-1 at 30. On April 1, 2009, GMACM agreed to modify Plaintiff's loan to a 1% interest rate provided she paid the principal balance due. Despite the interest rate modification, Plaintiff defaulted again in September, 2010. Meanwhile, Plaintiff had filed three bankruptcy petitions between June 2006, and December, 2010. Each one of Plaintiff's bankruptcy proceedings had been dismissed without discharge for various reasons, including failure to file required documents and failure to adhere to agreed payment arrangements.

Plaintiff's allegations in the present lawsuit stem from a permanent loan modification she claims was offered by GMACM on September 13, 2012. That modification was conditioned on Plaintiff completing a Trial Payment Period ("TPP"). In order to complete the TPP, Plaintiff had to make payments of $1,421.05 on the first of October, November, and December of 2012. According to Plaintiff, once she made all payments under the TPP, her permanent loan modification was supposed to be forthcoming and applied to her account. Plaintiff claims she made all payments contemplated by the TPP and alleges that near the end of December, 2012, she received a letter from GMACM stating that "she now qualified for the final loan modification and would receive it within about 30 days." FAC, ¶ 15. Plaintiff states she never received that promised modification.

Meanwhile, GMACM's parent company, Residential Capital, filed for Chapter 11

---

[3] The following recitation of facts is taken, sometimes verbatim, from Plaintiff's FAC, ECF No. 10, and Defendant's Motion to Dismiss, ECF No. 21.

[4] Ocwen's Motion includes unopposed requests, pursuant to Federal Rule of Evidence 201, that the Court judicially notice various documents either on grounds that said documents are referred to in Plaintiff's complaint but not attached, or on the basis that the documents constitute matters of public record whose authenticity can be readily determined. Those Requests for Judicial Notice are GRANTED.

1  bankruptcy protection along with some subsidiaries, including GMACM.  On
2  November 2, 2012, during GMACM's bankruptcy case, Ocwen entered into an Asset
3  Purchase Agreement (APA) with GMACM.  The relevant parts of the APA are as follows:
4  "[Ocwen] shall purchase from [GMACM], all of [GMACM's] rights, title and interest in, to
5  and under the following assets as they exist on the Closing Date. . . in each case free
6  and clear of all *Claims* and Liens.  APA, attached as Ex. G to Ocwen's Request for
7  Judicial Notice ("RJN"), ECF No. 21-3. p. 33, Section 2.1 (emphasis added).
8      Under the APA, a "claim" is defined as: ". . . any right to an equitable remedy for
9  breach of performance if such breach gives rise to a right of payment, whether or not
10 such right to an equitable remedy is reduced to judgment, fixed, contingent, matured,
11 unmatured, disputed, undisputed, secured or unsecured, known or unknown."  Id. at
12 p. 15.
13     The APA also states that "[GMACM] shall retain and be responsible for all
14 Retained Liabilities and [Ocwen] shall not have any obligation of any nature or kind with
15 respect thereto."  Id. at p. 33, Section 2.8.  "Retained Liability", in turn, is defined as:

> . . . any and all Liabilities of any kind or nature whatsoever of [GMACM] or any of its Affiliates (other than any Assumed Liability), including Liabilities arising under, in connection with or otherwise related to
>
> (e)   any and all lawsuits . . . and all claims made or pertaining to the period prior to the Closing Date . . . .

20 Id. at p. 23.
21     GMACM would consequently retain liability for any claims arising before the
22 Closing Date, February 15, 2016.  Conversely, Ocwen was responsible for "Assumed
23 Liabilities" including, but not limited to:

> "(iii)   the Liabilities arising under any Assumed Contract to the extent such Liabilities arise on and after the Closing; [and]
>
> (vi)   all Liabilities of the business or Purchased Assets to the extent arising from the conduct of the Business on or after the Closing other than any Retained Liabilities..."

28 Id. at p. 4.

On November 21, 2012, the APA was approved by the bankruptcy court that was handling GMACM's case. The bankruptcy court clarified that Ocwen agreed to the transaction and "does not and would not agree to assume anything other than the Assumed Liabilities." RJN, Ex. H, ¶ R. The bankruptcy court's Order goes on to specifically recognize Ocwen's right to be "free and clear of all Interests and including rights or Claims based upon successor or transferee liability, Claims or Liabilities relating to any act or omission of any originator, holder or servicer of Mortgage Loans prior to [February 15, 2013]. Id. at ¶ T.

Plaintiff received a letter dated February 6, 2013, from both Ocwen and GMACM, notifying Plaintiff that the Ocwen would soon be servicing her loan. The letter had additional information regarding loan modifications, and states that "[i]f you are currently on a trial modification plan or have a modification review underway, this process will continue." FAC, Ex. 2. On February 16, 2013, Ocwen officially became the new servicer of Plaintiff's loan.

On July 11, 2014, Plaintiff commenced this action in state court. Following its removal on diversity of citizenship grounds, Ocwen filed a Motion to Dismiss. ECF No. 5. On October 29, 2014, the Plaintiff was granted leave to file a FAC, which was filed on October 31, 2014. See ECF Nos. 9, 10. Both parties were subsequently granted a stay of litigation in order for Ocwen to process Plaintiff's loan modification application and review Plaintiff's entitlement to a modification. ECF No. 13. On March 25, 2016, after they were unable to resolve their differences, both parties filed a Joint Status Report so that the matter could proceed forward. ECF No. 20. Then, on March 28, 2016, Ocwen filed the instant Motion to Dismiss Plaintiff's FAC now before this Court.

///
///
///
///

4

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their

1 complaint must be dismissed." Id.  However, "[a] well-pleaded complaint may proceed
2 even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a
3 recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S.
4 232, 236 (1974)).

5 A court granting a motion to dismiss a complaint must then decide whether to
6 grant leave to amend.  Leave to amend should be "freely given" where there is no
7 "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice
8 to the opposing party by virtue of allowance of the amendment, [or] futility of the
9 amendment".  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.
10 Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to
11 be considered when deciding whether to grant leave to amend).  Not all of these factors
12 merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .
13 carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,
14 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that
15 "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group,
16 Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,
17 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.
18 1989) ("Leave need not be granted where the amendment of the complaint . . .
19 constitutes an exercise in futility").

## ANALYSIS

### A.   No Breach Of Contract

To state a claim for breach of contract a Plaintiff must allege: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff.  Reichert v. General Ins. Co., 68 Cal. 2d 822, 830 (1968); Austin v. Ocwen Loan Servicing, LLC, 2014 WL 3845182, at *4 (E.D. Cal. Aug 1, 2014).  Plaintiff alleges two theories under which Ocwen allegedly assumed GMACM's

6

1 obligation to modify Plaintiff's mortgage.  First, citing the February 6, 2013 letter she
2 received from both Ocwen and GMACM, Plaintiff claims that Ocwen ratified GMACM's
3 obligation.  Second, Plaintiff alleges that Ocwen assumed the obligation to modify her
4 mortgage by assuming GMACM's entire servicing contract.  For the following reasons,
5 the Court disagrees with both theories.

        **1.     The Defendant did not ratify agreement made between GMACM and Plaintiff.**

As indicated above, Plaintiff initially argues that Ocwen ratified GMACM's contractual obligations to modify Plaintiff's loan by letter dated February 6, 2013.  The letter notified borrowers that the Ocwen would soon be servicing their loans and contained the following statement: "If you are currently on a trial modification plan or have a modification review underway, this process will continue."  ECF No. 12 at 10.  Plaintiff relies on this language in arguing that Ocwen assumed, ratified, or "would be honoring all TPP/loan modifications agreements made with GMACM."  ECF No. 10 at 3.

The language from Ocwen's February 6, 2013 letter does not square with the interpretation Plaintiff advances.  The language expressly states that any trial modification plan or review that is "currently" occurring "will continue."  FAC, Ex. 2.  This clause can only mean that Ocwen wanted to assume and honor potential loan modifications that were "currently" on trial or being reviewed.  Plaintiff's complaint, on the other hand, states she had already been accepted for a permanent loan modification by GMACM in December, 2012 after having already completed the TPP process.  GMACM assured Plaintiff the loan modification would be applied to her account within the next thirty days.  Because both the TPP and the modification review process had already been completed, the February 6, 2013 correspondence relied upon by Plaintiff did not apply to Plaintiff's permanent loan modification because she was neither "on a trial modification plan", nor currently under review for modification.[5]  As to Ocwen, there was

---

[5] Plaintiff's promissory estoppel claim relies on the same language of the letter.  ECF No. 23 at 7.  One of the elements of promissory estoppel requires a promise clear and unambiguous in its terms.  Advanced Choices, Inc. v. State Dept. Health Services, 182 Cal. App. 4th 1661, 1672 (2010).  Due to the

no contract under which it agreed to honor representations made by GMACM that GMACM had already agreed to assume before the Closing Date of the APA.

**2.      The Defendant is not a successor in liability.**

As its second argument, Plaintiff alternatively claims that Ocwen consented to assume all of GMACM's obligations by assuming the loan servicing contract.  Under California Civil Code section 1589, "a voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting."  Plaintiff argues, under Section 1589, that Ocwen assumed GMACM's obligation to modify Plaintiff's loan merely because it had assumed the loan servicing contract.  Ordinarily, an assignee of a contract would assume the obligations of the assignor.  Here, however, Ocwen purchased the loan servicing contract from GMACM under conditions which foreclosed its liability for actions arising prior to the February 15, 2013 date it assumed the loan servicing contract.

On November 2, 2012, Ocwen and GMACM entered into the APA for purchase of GMACM's loan servicing contracts.  The terms of the APA provided that GMACM would be responsible for all retained liabilities.  As indicated above, the APA defines such retained liabilities as "any and all lawsuits . . . and all claims made or pertaining to the period prior to the Closing Date" of February 15, 2013.  APA, p. 23.  At the time, GMACM was filing for Chapter 11 bankruptcy, and the bankruptcy court approved the APA in an order on November 21, 2012.  The bankruptcy court unequivocally found that Ocwen "does not and would not agree to assume" any retained liabilities.  RJN, Ex. H. ¶ R.  Therefore, Ocwen is not liable for GMACM's conduct occuring prior to the closing date of the APA.

Plaintiff's breach of contract claim consists of "retained liabilities," as defined under the APA.  Plaintiff alleges GMACM offered to permanently modify her loan in

---

timing of the letter, the Defendant's promise to continue all modifications that were on trial or under review did not apply to Plaintiff.  Therefore, no promise was ever made by the Defendant and Plaintiff's promissory estoppel claim is dismissed without leave to amend.

September, 2012.  Sometime in December, 2012, GMACM allegedly promised that Plaintiff's loan would be modified with the changes posted to her account within thirty days.  Nonetheless, according to Plaintiff, GMACM never applied the permanent loan modification to her loan.  All conduct related to Plaintiff's breach of contract claim consequently pertains to the period prior to the Closing Date of the APA.  Therefore, Defendant cannot be held liable for GMACM's failure to modify Plaintiff's loan because of the terms of the APA, as approved by the bankruptcy court, precluded Ocwen's liability for claims arising prior to February 15, 2013.

Accordingly, the Court dismisses Plaintiff's breach of contract claim.[6]  Because Plaintiff cannot state a breach of contract claim against Ocwen as a matter of law, leave to amend is denied.  Furthermore, all other contractual breaches pertaining to Ocwen are moot, because Plaintiff cannot establish that Ocwen made a promise to Plaintiff to modify her loan in this first instance.

**B.    Alleged Negligence For Instructing Plaintiff To Continue Making Payments**

Plaintiff also alleges that Ocwen was negligent by instructing her "to make trial payments [to Defendant], while it continued to 'investigate' her situation."  (ECF No. 10 at 4 ¶ 22.)  A viable negligence claim entails the following elements: "(1) a legal duty to use reasonable care; (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury."  Mendoza v. City of L.A., 66 Cal. App. 4th 1333, 1339 (1998).

Ocwen argues here that Plaintiff's negligence claim fails to show it owed any cognizable legal duty.  "[A]s a general rule, a financial institution owes no duty of care to

---

[6] Plaintiff also fails to state a breach of implied covenant claim.  In order to successfully plead a breach of an implied covenant of good faith and fair dealing claim, a plaintiff must establish the existence of a contractual obligation, and as set forth above that obligation is lacking here.  McClain v. Octagon Plaza, LLC, 159 Cal. App. 4th 784, 799 (2008); Kanady v. GMAC Mortg., LLC, 2010 WL 4010289, at *16 (E.D. Cal. Oct 13, 2010) (holding no covenant existed during negotiations and prior to the existence of a contract).  Plaintiff's implied covenant claim is thereby dismissed without leave to amend.

a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Assn., 231 Cal. App. 3d 1089 (1991).

Courts look to the so-called Biakanja factors when determining whether to recognize a duty of care. Lueras v. BAC Home Loans Servicing, LP, 221 Cal. App. 4th 49, 63 (2013), (citing Biakanja v. Irving, 49 Cal. 2d 947, 650 (1958))  Those factors are (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm. Id. at 63.

In Lueras, the court held that the Biankanja factors did not support a common law duty to offer or approve a loan modification. Id. at 67 (reasoning that if "the lender did not place the borrower in a position creating a need for a loan modification, then no moral blame would be attached to the lender's conduct").  The plaintiff in Lueras had requested and submitted documents for a loan modification through Fannie Mae. Id. at 58.  In turn, Fannie Mae sent the documents to the defendant, the loan servicer of plaintiff's loan. Id.  The defendant sent a letter to plaintiff stating they were reviewing the loan modification and that the original documents had been sent to the wrong department by accident. Id. at 59.  After receiving the letter, plaintiff contacted the defendant, who then proceeded to tell plaintiff that the letter had been sent on accident because his loan had already been approved.  Plaintiff was never notified that his loan was rejected, either from the defendant or Fannie Mae. Id.  Soon thereafter, the defendant conducted foreclosure sale on plaintiff's home.  Plaintiff filed a negligence claim against the lender claiming the lender breached their duty by "'failing to comply with state consumer protection laws, properly service the loan, and use consistent methods to determine modification approvals.'" Id. at 63.

///

The court in Lueras held that the lender "did not have a common law duty of care to offer, consider, or approve a loan modification." Compare Id. at 68; with Alvarez v. BAC Home Loans Servicing, LP, 228 Cal. App. 4th 941, 944-51 (2014) (finding the existence of a duty to review loan modification requests with reasonable care once loan servicers agreed to consider them). The Lueras court reasoned that allegations of the lender owing a duty to "'follow through on their own agreements,' [and] to comply with consumer protections laws . . . fail to state a cause of action for negligence because such duties, if any, are imposed by the loan documents. . . ." Id. The court ultimately held that if the lender failed to uphold an agreement, then the plaintiff's "remedy lies in a breach of contract, not negligence." Id.

The Court finds the court's logic in Lueras persuasive in the present matter. Plaintiff alleges that Ocwen was negligent by instructing her to continue making payments under the loan modification plan while her situation was investigated. Plaintiff also contends that Ocwen breached the duty it owed by failing to apply the loan modification allegedly agreed to by GMACM. Plaintiff does not allege, however, that Ocwen, as opposed to GMACM, ever promised to approve her loan, offered her a loan modification, or considered her previous loan modification with GMACM. Given those facts, Ocwen owed no duty to review the loan modification with reasonable care or accept a loan modification. Cf. Alvarez, 228 Cal. App. at 944-951.

Even if Ocwen applied the loan modification which GMACM purportedly promised, Ocwen does not owe a duty to follow through with those promises, and any redress necessarily lies with "breach of contract, not negligence." Lueras, 221 Cal. App. at 68. For the reasons stated above, Defendant cannot be held accountable for the faults of its successor, GMACM. Therefore, Plaintiff's FAC does not, and cannot as a matter of law, state a claim for negligence based on Ocwen's instructions that Plaintiff continue paying her loan while they investigated the loan modification. As a result, Plaintiff's negligence claim is dismissed without further leave to amend.

///

### C. Violation Of Civil Code Section 17200

The Unfair Competition Law ("UCL") permits civil recovery for "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising...." Cal. Bus. & Prof. Code, § 17200. "Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent..." Lueras, 221 Cal. App. 4th at 80-81 (internal citations omitted).

Plaintiff alleges that Ocwen's promise to honor GMACM's loan modification constituted "unfair" and "fraudulent" business practices under the UCL. However, Plaintiff's allegations are based on the February 6, 2013 letter sent by GMACM and Ocwen. As stated above, contrary to Plaintiff's representation otherwise, that letter did not contain any representation that Ocwen intended to honor the TPP agreements GMACM had with its borrowers. Therefore, as a matter of law, Plaintiff's FAC fails to state a claim for violating California's UCL. Accordingly, Plaintiff's UCL claim is dismissed without leave to amend.

### CONCLUSION

For all the foregoing reasons, Ocwen's Motion to Dismiss, ECF No. 21, is GRANTED. Plaintiff's First Amended Complaint is DISMISSED without further leave to amend. The Clerk of Court is directed to close the file.

IT IS SO ORDERED.

Dated:  October 18, 2016

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE